**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lindsay R. Murrell-Travland | No. CV-11-01622-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| On Q Financial, Inc. | |
| Defendant. | |

Pending before the court is Defendant On Q Financial's Motion for Summary Judgment. (Doc. 29.) For the reasons stated below, the Court denies the motion.[1]

**BACKGROUND**

Until October 2007, Plaintiff Lindsay Murrell-Travland worked for On Q, a mortgage brokerage firm. (Doc. 30 ¶¶ 1, 31; Doc. 34 ¶¶ 1, 31.) Murrell-Travland had a variety of responsibilities at On Q, including reviewing loan files and interacting with investors and underwriters. (Doc. 30 ¶¶ 2; Doc. 34 ¶ 2.) In February 2007, John Bergman, president of On Q, called Murrell-Travland into his office to discuss her performance. (Doc. 30 ¶¶ 4-16; Doc. 34 ¶¶ 4-16.) During this meeting, Bergman and Murrell-Travland apparently talked about areas where Murrell-Travland could improve on her performance. (*Id.*) No disciplinary action was taken.

---

[1] On Q's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

About a month later, in March 2007, Murrell-Travland and a fellow employee informed Bergman that they were pregnant. (Doc. 30 ¶ 18; Doc. 34 ¶ 18.) They were the first On Q employees to request a leave of absence for childbirth. (Doc. 34, Ex. 2 (Bergman Dep.) at 80.) The employees told Bergman that they would most likely need to take time off in the fall for sequential six-week periods. (Doc. 30 ¶ 19; Doc. 34 ¶ 19.) Bergman appeared concerned about the situation. (Doc. 30 ¶¶ 26-29; Doc. 34 ¶¶ 26-29.) At the time, Bergman did not express any desire to terminate either woman on the basis of their newly disclosed pregnancies. (Doc. 30 ¶ 30; Doc. 34 ¶ 30.) After this meeting, Murrell-Travland continued her work. From February until October 2007, Bergman claims that he received numerous complaints regarding the quality of Murrell-Travland's work as well as her inability to work with other employees. (Doc. 30 ¶¶ 32-45; Doc. 34 ¶¶ 32-45.) Nevertheless, over the course of that year, Bergman gave Murrell-Travland a number of "thank-you" cards and notes. (Doc. 30 ¶¶ 67-70; Doc. 34 ¶¶ 67-70.)

On October 7, 2007, Bergman informed Murrell-Travland that she was being terminated. (Doc. 30 ¶ 31; Doc. 34 ¶ 31.) On Q claimed that it terminated Murrell-Travland for a history of performance issues. (Doc. 30 ¶ 32; Doc. 34 ¶ 32.) In contrast, Murrell-Travland argues that On Q terminated her employment because it viewed the timing of her upcoming pregnancy leave as inconvenient and did not want to pay her for time off. Murrell-Travland filed an EEOC charge asserting pregnancy discrimination on October 19. (Doc. 34 ¶ 83.) 11 months later, the EEOC issued its Final Determination authorizing Murrell-Travland to bring suit. (*Id.* ¶ 84.)

**DISCUSSION**

**I.   LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

## II.   ANALYSIS

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), prohibits discrimination of the basis of sex. In 1978, Congress amended Title VII to clarify that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical condition." 42 U.S.C. § 2000e(k). In addition, the amendment states that "women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work. . . ." *Id.* The analysis in pregnancy discrimination cases is thus no different than for other Title VII claims. *Quaranta v. Mgmt. Support*, 255 F. Supp. 2d 1040, 1044 (D. Ariz. 2003).

Except when there is direct evidence of discrimination, the analysis of a Title VII discrimination claim is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). The *McDonnell Douglas* burden-shifting framework requires Murrell-Travland to first establish a prima facie case of discrimination. *See Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001). The burden then shifts to On Q to articulate a legitimate nondiscriminatory reason for its employment decision. *Id.* In order to defeat On Q's motion for summary judgment, Murrell-Travland must then set forth specific and substantial evidence that the employer's purported reason for the adverse employment action was merely a pretext for a discriminatory motive. *Id.*

### A. Prima Facie Case

A plaintiff who seeks to establish a prima facie case through circumstantial evidence must meet the four *McDonnell Douglas* requirements, namely that she (1) is a member of a protected class, (2) performed according to the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than other employees similarly situated. *See Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). "[U]nder the *McDonnell Douglas* framework, 'the requisite degree of proof necessary to establish a prima facie case for Title VII on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). At the prima facie stage, the court does not consider any nondiscriminatory reasons proffered by the defendant. *See, e.g.*, *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659-60 (9th Cir. 2002) "'Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Villiarimo*, 281 F.3d at 1062 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

On Q does not dispute that Murrell-Travland has established the first three elements of the *McDonnell Douglas* test. Instead, On Q argues that Murrell-Travland has failed to introduce any evidence that she was treated less favorably than other employees similarly situated. Applying the *McDonnell Douglas* fourth element to Murrell-Travland's case, she would have to show that On Q permitted non-pregnant employees to request up to six weeks leave for medically-related purposes without being terminated. Arguably, there is no such showing in the record. But the Ninth Circuit has allowed the fourth element to be satisfied by a showing that the employee alleging discrimination was replaced by another employee who lacked the attribute that supposedly supplied the basis for discrimination. *See Villiarimo*, 281 F.3d at 1062 (in gender discrimination case, plaintiff "must show that . . . similarly situated men were treated more favorably, *or* her

position was filled by a man") (emphasis added) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (same for age discrimination). Furthermore, a decision in this District has held "that [a] plaintiff can either show similarly situated individuals were treated differently or that she was replaced by a non-pregnant employee, in order to make out a prima facie case." *Quaranta*, 255 F. Supp. 2d at 1047. An unpublished Ninth Circuit opinion took a similar course: "To state a prima facie case of discrimination, [Plaintiff] must show that . . . similarly situated persons not in her protected class were treated more favorably or that her position was filled by a person who was not pregnant." *Fulkerson v. AmeriTitle, Inc.*, 64 Fed. App'x 63, 65 (9th Cir. 2003). Pregnancy discrimination cases are derivative of sex discrimination cases, and a sex discrimination plaintiff can make out a prima facie case by showing she was replaced by someone outside her protected class. That same principle applies here. In his deposition, Bergman testified that On Q replaced Murrell-Travland with a non-pregnant employee. (Doc. 34, Ex. 2 (Bergman Depo) at 83:23-84:20.) Murrell-Travland has succeeded in establishing a prima facie case.

### B. Legitimate, Non-discriminatory Reason

The burden now shifts to the employer to set forth a legitimate, non-discriminatory reason for the adverse employment action. *See Villiarimo*, 281 F.3d at 1062. Once the employer fulfills this burden of production, the "presumption of unlawful discrimination 'simply drops out of the picture.'" *Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 507). "This is true even though there has been no assessment of the credibility of [the employer] at this stage." *Id.* at 892 (citing *Burdine*, 450 U.S. at 254). Thus the employer's burden is one of "production, . . . not persuasion." *Chuang*, 225 F.3d at 1123–24. It "must clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." *Burdine*, 450 U.S. at 254–55. "An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Id.* at 255 n.9.

On Q asserts that Murrell-Travland was terminated on the basis of her lackluster

performance. Poor performance is a legitimate, non-discriminatory reason for termination. *See, e.g., Aragon*, 292 F.3d at 661. Bergman has testified that Murrell-Travland, among other things, was not dependable, failed to follow through on her assignments, and did not work well with On Q's customers. (*Id.*, Ex. E.) To support its assertion, On Q relies on some contemporaneous evidence of performance complaints against Murrell-Travland.  First, Bergman and Murrell-Travland met in February 2007 to discuss her job performance. (Doc. 30 ¶ 4; Doc. 34 ¶ 4.) The parties vigorously dispute the purpose and content of that conversation, but there is evidence that one purpose of that meeting was to discuss areas where Murrell-Travland needed to improve her performance. (Doc. 30 ¶ 8; Doc. 34 ¶ 8.) During Murrell-Travland's deposition, she admitted that she received critiques of her performance in this meeting. (Doc. 30, Ex. A (Murrell-Travland Dep.) at 27:10-19.) For instance, she came out of that meeting with a list of action items to assist her in raising her level of performance. (*Id.* at 27:19-29:18.) While Murrell-Travland has contested that interpretation of the events, at this stage the Court looks at the employer's evidence as true. *See Bodett v. CoxCom, Inc.*, 366 F.3d 736, 744 (9th Cir. 2004) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 509).

Second, Bergman testified that he received numerous complaints about Murrell-Travland's work over the course of the months preceding her termination. For instance, employees reportedly asked Bergman to replace Murrell-Travland and refused to work further with her. (Doc. 30 ¶¶ 34-41; Doc. 34 ¶¶ 34-41.) To take an example, Bergman asserted that at "a mortgage industry sales retreat . . . Shane and Glenn and Pam [mortgage consultants] . . . literally cornered me at the end of the day begging me to fire [Murrell-Travland], that they couldn't deal with the stress of working with her anymore and that it was causing them heavy grief." (Doc. 30, Ex. B (Bergman Dep.) at 18:8-21.)

Murrell-Travland objects that the evidence is inadmissible—without stating why—and that On Q's inability to produce record evidence of Murrell-Travland's alleged poor performance, such as disciplinary reports, destroys any evidentiary value the statements might have. Evidence supporting an employer's claim of a legitimate, non-

discriminatory reason for adverse employment action must be admissible. *See Burdine*, 450 U.S. at 254–55. Murrell-Travland does not indicate the basis for concluding that Bergman's statements are inadmissible. While the statements presented could constitute hearsay, the Court need not to make that precise determination at this point because such statements are frequently not offered for the truth of the matter asserted in an employment discrimination case—e.g., that Murrell-Travland was actually a poor co-worker. *See Villiarimo*, 281 F.3d at 1063. Rather, such statements may, depending upon the facts, be offered for the effect they had on a supervisor's assessment of the employee's job performance. Therefore, statements of co-workers that Bergman repeats in his testimony are arguably not hearsay because they go to what he thought, not to the truth of the matter. *See* Fed. R. Evid. 801(c)(2) ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement.") The balance of Murrell-Travland's objections to On Q's proffered reasons for termination—namely, that there is nothing more than the statements of Bergman—go to the weight and credibility of the evidence. Yet at phase two of the *McDonnell Douglas* test on a motion for summary judgment, "this court must take [On Q's] evidence supporting its alleged reason for terminating [Murrell-Travland] . . . as true." *Bodett*, 366 F.3d at 744. The burden is one of production, not persuasion.

On Q has carried its burden of production to establish a legitimate, non-discriminatory reason for its termination of Murrell-Travland: her performance was deficient.

**C.    Pretext**

As On Q is able to articulate a non-discriminatory reason, the burden shifts back to Murrell-Travland, who must be "afforded a fair opportunity to show that [the] stated reason for [the challenged action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. A plaintiff may demonstrate pretext in either of two ways: "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence

1  because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media*
2  *Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011). "Where evidence of pretext is
3  circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial'
4  facts to create a triable issue of pretext." *Id.* at 1113 (quoting *Godwin v. Hunt Wesson,*
5  *Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)). Yet "a plaintiff's burden to raise a triable issue
6  of pretext is 'hardly an onerous one.'" *Id.* (quoting *Payne v. Norwest Corp.*, 113 F.3d
7  1079, 1080 (9th Cir. 1997)). "If a plaintiff succeeds in raising a genuine factual issue
8  regarding the authenticity of the employer's stated motive, summary judgment is
9  inappropriate, because it is for the trier of fact to decide which story is to be believed."
10 *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993).

11 For the most part, Murrell-Travland does not seek to establish pretext with direct
12 evidence. She does, however, rely on a statement made by Bergman when she told him
13 that she was pregnant. His first response was to ask: "who's the father?" (Doc. 30 ¶ 22;
14 Doc. 34 ¶ 22.) While this comment—if it occurred—seems at best insensitive, the remark
15 does not show that Bergman sought to discriminate against her on the basis of her
16 *pregnancy*, which is the claim Murrell-Travland has brought. Because Murrell-Travland
17 has not pointed to any other direct evidence in the record that would should Bergman or
18 any other On Q decisionmaker treated her differently because of her pregnancy, she must
19 "show[] that [On Q's] proffered explanation is unworthy of credence because it is
20 internally inconsistent or otherwise not believable." *Earl*, 658 F.3d at 1112-13.

21 Murrell-Travland emphasizes a variety of evidence that she claims undermines On
22 Q's proffered explanation of subpar performance. Primarily, she stresses the lack of
23 contemporaneous documentation of her allegedly poor work. On Q has no record
24 evidence of any disciplinary action or negative performance evaluations. Nor is there any
25 evidence that would corroborate Bergman's claims regarding being inundated with
26 complaints. A company—and certainly a small company—need not have a detailed
27 recordkeeping system in order to justify adverse employment action. But the fact that On
28 Q has offered nothing more than Bergman's claims of what other employees said, rather

1 than statements from the employees themselves does cut against it. Moreover, Murrell-Travland points out that she received several notes from Bergman and fellow employees over the course of the period in question that lauded her performance. For instance, in one of the notes, Bergman stated "I want to let you know how valued you are here . . . . As long as you trust that I value you as a very important employee, you'll never need to worry about any mistakes, or improvement opportunities—as they are good things for both of us." (Doc. 30, Ex. G at 2.) These notes create issues of fact regarding whether Murrell-Travland's performance was, in fact, deficient.

Murrell-Travland next points to the timing of the firing—30 days before her delivery date and the day On Q knew she would go on leave. (Doc. 30, Ex. A (Murrell-Travland Dep.) at 7-8.) For support, she cites *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119 (E.D.N.Y. 2011). *Briggs* noted that "the [Pregnancy Discrimination Act] is meant to protect against discrimination before, during, and after a woman's pregnancy." *Id.* at 128 (internal quotations omitted). "Temporal proximity between the plaintiff's termination and her pregnancy, childbirth, or related medical condition can raise an inference of discrimination," but it must be "accompanied by other circumstantial evidence." *Id.* Suspicion arises when there is a close relationship between a pregnancy event and termination. *Id.* Here, termination took place on October 7, 2007, which was quite close to when Murrell-Travland was due to deliver her child. The timing of the termination does raise questions about whether On Q's proffered reason was pretextual.

Murrell-Travland also relies on On Q's employee handbook, which sets out a tripartite system of discipline (verbal warning, written warning, and termination) that was not followed in this instance. (Doc. 34, Ex. 7 at 39.) As On Q correctly notes, a handbook does not create a binding obligation on the part of an employer. Nevertheless, "[a] plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl*, 658 F.3d at 1117 (citing *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir. 2008)). On Q's failure to follow its own internal progressive discipline policy is evidence from

1  which Murrell-Travland can argue that she was not, in fact, underperforming and was
2  terminated for a pretextual reason.

3  Finally, Murrell-Travland supplied a declaration from Glenn Reible, a former On
4  Q employee. Reible was among the employees who, according to Bergman, insisted on
5  Murrell-Travland's termination. (Doc. 30, Ex. B (Bergman Dep.) at 18-19.) Reible
6  admits that he did raise concerns about Murrell-Travland's performance in 2005 or early
7  2006. (Doc. 34, Ex. 3 (Reible Decl.) ¶ 7.) Reible, however, states in his declaration that
8  he has no memory of "begging" Bergman to fire Murrell-Travland and "strongly
9  disagree[s]" with Bergman's characterization of him as one of the "key drivers" in his
10 decision to fire Murrell-Travland. (*Id.* ¶¶ 7-8.) Moreover, Reible asserts that he
11 developed a good working relationship with Murrell-Travland and did not find her
12 difficult to work with. (*Id.* ¶¶ 6-8.) He states that Murrell-Travland did good work and
13 did not hinder him. (*Id.* ¶ 8.)

14 All of these considerations, taken together, are sufficient to carry Murrell-
15 Travland's burden to "produce 'specific' and 'substantial' facts to create a triable issue of
16 pretext." *Earl*, 658 F.3d at 1113. The evidence from Bergman himself and other
17 employees that they thought Murrell-Travland was doing a good job, the timing of the
18 termination, the failure to follow handbook procedure, and the fact that one of Bergman's
19 alleged sources of complaints regarding Murrell-Travland has contradicted that
20 testimony, taken together, raise doubts about On Q's proffered reason for terminating
21 Murrell-Travland. As the Ninth Circuit has stated, "[i]n evaluating motions for summary
22 judgment in the context of employment discrimination, we have emphasized the
23 importance of zealously guarding an employee's right to a full trial, since discrimination
24 claims are frequently difficult to prove without a full airing of the evidence and an
25 opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*,
26 360 F.3d 1103, 1112 (9th Cir. 2004) (citing cases). The evidence before the Court creates
27 a sufficient dispute of material fact to render summary judgment inappropriate.

28

**CONCLUSION**

All of the parties have carried their respective burdens under the *McDonnell Douglas* framework. Accordingly, summary judgment is not appropriate and On Q's motion is denied.

**IT IS THEREFORE ORDERED** that Defendant On Q's Motion for Summary Judgment (Doc. 29) is **DENIED.**

Dated this 23rd day of October, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge